LINCOLN STREET RAILWAY COMPANY v. CHRISTIAN
H. ADAMS.

FILED SEPTEMBER 18, 1894.  No. 5572.

Surface Water: STREET RAILWAYS: DAMAGES.  A proprietor
may not collect surface waters on his estate into a ditch or drain
and discharge them in a volume on the lands of his neighbor.
*Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 138, followed.

ERROR from the district court of Lancaster county.
Tried below before HALL, J.

The opinion contains a statement of the case.

*William G. Clark,* for plaintiff in error:

An adjoining owner cannot, by a ditch or canal, empty a natural reservoir, such as a pond, slough or "sag hole," onto his neighbor. (*Davis v. Londgreen,* 8 Neb., 43; *Pettigrew v. Village of Evansville,* 25 Wis., 223.)

After receiving surface water onto his land, the proprietor cannot collect the fugitive waters which would otherwise soak into the ground or would run off in many streams and directions, and discharge the accumulations in a single stream onto his neighbor. (*Pettigrew v. Village of Evansville,* 25 Wis., 236; *Fremont, E. & M. V. R. Co. v. Marley,* 25 Neb., 138; *Barkley v. Wilcox,* 86 N. Y., 146.)

A man may stand at the boundary line of his estates and, by ditch, dike, or erections of any character, may fight surface waters as a common enemy, without regard to accumulations or to directions such accumulated waters may take or to damage they produce. (*Dickinson v. Worcester,* 7 Allen [Mass.], 19; *Parks v. City of Newburyport,* 10 Gray [Mass.], 28; *Turner v. Inhabitants of Dartmouth,* 13 Allen [Mass.], 291; *Flagg v. City of Worcester,* 13 Gray [Mass.], 603; *Gannon v. Hargadon,* 10 Allen [Mass.], 106; *Morrison v. Bucksport & B. R. Co.,* 67 Me., 353; *Phinizy v. City Council of Augusta,* 47 Ga., 260; *Schlichter v. Phillipy,* 67 Ind., 202; *Pettigrew v. Village of Evansville,* 25 Wis., 236; *Ulrich v. Richter,* 37 Wis., 229; *Freburg v. City of Davenport,* 63 Ia., 119; *Morris v. City of Council Bluffs,* 67 Ia., 344; *Barkley v. Wilcox,* 86 N. Y., 146; *Johnson v. Chicago, St. P., M. & O. R. Co.,* 80 Wis., 641; *Jordon v. St. Paul, M. & M. R. Co.,* 42 Minn., 175; *Kansas City & E. R. Co. v. Riley,* 33 Kan., 376; *Atchison, T. & S. F. R. Co. v. Hammer,* 22 Kan., 763; *Abbott v. Kansas City, St. J. & C. B. R. Co.,* 83 Mo., 286; *Schneider v. Missouri P. R. Co.,* 29 Mo. App., 68; *Burke v. Missouri*

*P. R. Co.*, 29 Mo. App., 370; *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 138.)

A municipal or railway corporation has precisely the rights of an individual. It may keep off surface water. It is not bound to provide sewers or culverts or protect parties owning low, undesirable property. Such parties are presumed to protect themselves when purchasing, and buy with reference to the right of neighbors or public to fight surface water. (*Heth v. City of Fond du Lac*, 63 Wis., 228; *Waters v. Village of Bay View*, 61 Wis., 642; *Hoyt v. City of Hudson*, 27 Wis., 656; *Weis v. City of Madison*, 75 Ind., 241; *Lambar v. City of St. Louis*, 15 Mo., 610; *White v. Corporation of the City of Yazoo*, 27 Miss., 357; *Lynch v. City of New York*, 76 N. Y., 60; *Town of Union v. Durkes*, 38 N. J. Law, 21; *Mills v. City of Brooklyn*, 32 N. Y., 489; *Henderson v. City of Minneapolis*, 32 Minn., 319; *Barry v. City of Lowell*, 8 Allen [Mass.], 127.)

*Pound & Burr, contra:*

Adams is not an upper land owner upon whose land surface water is kept by the erections of the company, but a lower owner upon whose land it is discharged in great quantities by the artificial channel made by the company. Whether or not a lower owner can keep back surface water and restrain it on the land of an upper owner; whether or not one owner can prevent it from spreading out over his land by elevating it or by embankments and thus cause it to stand on or to spread out over adjoining lands, it is well settled and undisputed that no one can collect surface water and discharge it in an artificial channel on the land of another. Much less can he collect in a large cut the surface water of an entire district, conduct it in channels of his own making over one hundred yards, and pour it in a torrent upon another's land. (*Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 139; *Davis v. Londgreen*, 8 Neb., 43; *Gregory v. Bush*, 64 Mich., 37, 44; *Noonan v. City of Al-*

*bany,* 79 N. Y., 470; *Livingston v. McDonald,* 21 Ia., 160; *Templeton v. Voshloe,* 72 Ind., 134; *Yerex v. Eineder,* 86 Mich., 24; *Hogenson v. St. Paul, M. & M. R. Co.,* 31 Minn., 224; *Miller v. Laubach,* 47 Pa. St., 154; *Crabtree v. Baker,* 75 Ala., 91; *Knight v. Brown,* 25 W. Va., 808; *Cairo & V. R. Co. v. Stevens,* 73 Ind., 278; *Gulf, C. & S. F. R. Co. v. Helsley,* 62 Tex., 593; *Benson v. Chicago & A. R. Co.,* 78 Mo., 504.)

A city cannot collect surface water and pour it on private land. (*Gillison v. City of Charleston,* 16 W. Va., 282; *Byrnes v. City of Cohoes,* 67 N. Y., 204.)

Drainage commissioners and other public officers cannot collect surface water in ditches and discharge it on private land. (*Chapel v. Smith,* 80 Mich., 101; *Young v. Commissioners of Highway,* 134 Ill., 569.)

RAGAN, C.

This suit was brought by Christian H. Adams in the district court of Lancaster county against the Lincoln Street Railway Company for damages. As the petition is well drawn and concisely states the facts relied upon for a cause of action we quote it at length. It is as follows:

"The plaintiff, for cause of action against the said defendant, alleges that he is and was on and prior to the —— day of April, 1891, the owner in fee-simple and in possession of lot A, in South Park addition to the city of Lincoln, in said county, and the lessee and in possession of lots thirty-two and thirty-three (32 and 33), in block four (4), in said South Park addition; that upon said lot A are the dwelling house of the plaintiff, where he and his family resided on said —— day of April, 1891, and now reside, and his barn, well, and outhouses; that said lots 32 and 33 then were and are used by plaintiff as a market garden; and the plaintiff alleges that the grade and track of the Burlington & Missouri River Railroad Company runs along the west side of said lots, and that one of the public

streets of said city of Lincoln, known as Hill street, runs between said lot A and the said lots 32 and 33, across said railroad track, the said lot A being on the south side thereof and said lots 32 and 33 on the north side; that the said railroad grade and track are elevated some three or four feet above the surface of said lots; that prior to said —— day of April, 1891, said Hill street was on the same level with said lots, and that prior to said —— day of April, 1891, the surface water in case of rains was wont to and did flow across said Hill street to the east of said lots and to a ravine and culvert under said railroad track and thence to the west side of said track; that east of said lots, about one hundred yards on said Hill street, there is a hill which, prior to said —— day of April, 1891, sloped gradually to said ravine so that the surface water from said hill in case of rain was wont to and did flow into said ravine and through said culvert to the west side of said railroad track.

"And the plaintiff further alleges that the said defendant is a corporation duly organized under the laws of the state of Nebraska; that on said —— day of April, 1891, the said defendant began to lay its track upon and along said Hill street from a public street of said city known as Tenth street, two blocks east of plaintiff's said lots, across said railroad track and grade and beyond the same; that in laying said track the said defendant carelessly and negligently made a deep cut of the depth of three feet and upwards in said hill east of plaintiff's said lots along said Hill street, and from the base of said Hill street west to said railroad track carelessly and negligently raised and graded up the middle of said Hill street to a level with said railroad track and grade and over two feet above the surface of said lot and built and laid their said track thereon, and carelessly and negligently omitted and failed to put culverts under their said track and grade and carelessly and negligently failed to provide for carrying off the

surface water from said cut in said hill, and in constructing
said grade and laying said track carelessly and negligently
dug ditches on each side thereof for the purpose of obtain-
ing earth for said grade and failed to provide means for
conducting the water therefrom at the place where said
track crosses said railroad track, by reason whereof all the
surface water from the south side of said Hill street which
was wont to flow across said Hill street and into said ra-
vine is now stopped by said grade and track of the de-
fendant and accumulates, stands, and remains upon said lot
A, and the surface water from said hill which was wont
to flow into said ravine now flows into said cut and along
either side of said grade and track of defendant in the
ditches on either side thereof and cuts and wears ditches
and channels on either side thereof and flows from and
out of such ditches and channels in and upon said lots of
the plaintiff on either side of said street and there stands
and accumulates, and is unable to flow off plaintiff's said
lots, owing to the carelessness and negligence of the de-
fendant in not providing proper culverts under said track
and grade, and in constructing said cut so as to divert the
surface water from said hill and from its natural course
and direction, and cause it to flow into said cut and thence
into and along said Hill street instead of into said ravine
as it had been wont to flow.

"And the plaintiff further alleges that on or about the
first day of June, 1891, he had growing in his market
garden in said lots 32 and 33 upwards of 3,000 cabbages
and 5,000 egg plants, of the value of $800; that on or
about said date there were heavy rains, and that by reason
of the negligence of the defendant, as above set forth, all
the surface water from said hill flowed in and upon said
lots and deposited large quantities of waste and refuse
matter thereon and there accumulated, stood, and remained
for the space of two weeks and upwards, being unable to
run off by reason of the negligence of the defendant in

constructing said cut and track as above set forth, and thereby destroyed said cabbages and egg plants and rendered said lots utterly unfit to be used as a market garden and deprived the plaintiff of the use of the same; that on said date, by reason of the negligence of the defendant in constructing said cut and grade as above set forth, the surface water from said hill and from the south side of said Hill street flowed in and upon said lot A, and, owing to the negligence of said defendant in not providing culverts under their said grade and track, was unable to flow off from said lot but accumulated thereon to the depth of two feet and stood and remained thereon for the space of two weeks and upwards and brought and deposited large quantities of refuse and waste matter thereon, and filled up the well of the plaintiff with foul water and refuse matter, by reason whereof the water in said well became unwholesome and unfit to use, so that plaintiff was and is obliged to go more than 100 yards distant from his said house for water, and filled the cellar of plaintiff's house on said lot and destroyed his goods therein and rendered his house unhealthy, and the said waste and refuse matter brought and deposited upon said lot by said water decayed and produced foul, noisome, and unhealthy odors, and rendered the family of the plaintiff, to-wit, his wife and five children, sick and diseased for the space of several months, and from which sickness they have not yet recovered, and the plaintiff was compelled and obliged by reason thereof to neglect his necessary business to attend to and care for his family for the space of two months, and has been compelled to pay out and expend for medicines and services of a physician in caring for his family a large sum of money, to-wit, the sum of $250 and upwards; and the plaintiff alleges that said water stood in his barn on said lots and covered the floor thereof and caused the hay and manure therein to rot and decay and give rise to noxious and unhealthy odors, and rendered the same unfit to be used by

the plaintiff, by reason whereof plaintiff was compelled to tear down, remove, and rebuild the same, and in so doing to expend a large sum of money, to-wit, the sum of $50; and that by reason of the water standing upon said lot as aforesaid, and depositing said refuse and waste matter thereon, said premises have been rendered unhealthy and uninhabitable."

The answer of the street railway company was, in substance, a general denial. Adams had a verdict and judgment, and the street railway company brings the case here for review.

Counsel for the street railway company insists that the grievances pleaded and proved against his client arose from its acts and efforts to protect its property from surface water, and that if Adams sustained any damages by reason thereof, the street railway company is not liable therefor. In other words, the contention of counsel is that the facts pleaded and proved against the street railway company bring it within the rule of the common law, that a proprietor, by dikes or erections on his own land, may fight surface water as a common enemy without regard to its accumulation or to directions such accumulated water may take or to damages it may do. (See the rule stated and the authorities collated in 24 Am. & Eng. Ency. Law, 917.) But we think that the pleadings and evidence in this case do not bring it within the rule just stated. The petition in this case was framed upon the theory that the cut made by the street railway company in Hill street gathered together the surface waters which would otherwise have flowed off in many streams and in other directions and discharged them in a body on the property of Adams. The evidence supports the allegations of the petition and the findings of the jury in this respect. This case then falls within the rule that a proprietor may not collect surface waters on his estate into a ditch or drain and discharge them in a volume on the land of his neighbor. (*Hogenson v. St. Paul, M. &*

*M. R. Co.*, 31 Minn., 224.) Such is also the doctrine of this court. (*Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 139. See the rule stated and cases in support thereof, 24 Am. & Eng. Ency. Law, 928.)

There are a number of errors assigned as to the admission and rejection of testimony and to the giving and refusing of instructions by the trial court. It would subserve no useful purpose to discuss here these assignments, as no one of them can be sustained. The learned counsel for the plaintiff in error strenuously insists that the verdict of the jury is unsupported by sufficient evidence, and that, in any event, the amount of damages awarded Adams by the jury is excessive. The evidence is not of the most satisfactory or convincing character, but it is sufficient to support the verdict. The judgment must be and is

AFFIRMED.