PETER JACOBSON, APPELLEE, V. JOHN VAN BOENING, APPELLANT.

FILED APRIL 10, 1896. No. 6441.

1. Surface Water: DAMAGES. In this state the common law rule prevails that a proprietor may, by barriers or otherwise, protect his land from surface water coming from or across adjacent lands, and for injuries occasioned to others from a proper exercise of that right, he is not responsible. *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb., 406, followed.

2. ———: NEGLIGENCE: DAMAGES. If in the execution of such object such proprietor is guilty of negligence which is the natural and proximate cause of injury to the adjoining proprietor, he is accountable therefor. *Anheuser-Busch Brewing Association v. Peterson*, 41 Neb., 897, followed.

3. ———: ———: ———. One may not accumulate surface waters on his own land and by means of a ditch discharge them in a volume upon the land of another. *Fremont, E. & M. V. R. Co. v. Marley*, 25 Neb., 138, followed.

4. ———: ———: ———. The former decisions of this court reviewed, and *held* to be in harmony with the foregoing principles.

5. ———: ———: INJUNCTION. Against a continuing injury to land caused by an unlawful discharge of surface waters by an adjoining proprietor, equity will afford relief by injunction.

6. ———: ———: ———: DAMAGES: EVIDENCE. In such case it is not necessary for the plaintiff to prove that actual injury occurred before the suit was brought. The remedy is in such case preventive, and will be granted on proof that the acts complained of, unless restrained, will result in damage.

7. ———: ———: ———. To such an action it is no defense that the injury is in part threatened by the acts of another. The plaintiff has his remedy against each one contributing thereto.

8. Actions: MALICE. Where one has a valid cause of action against another, his motive in instituting it is immaterial, and the fact that it is inspired by malice is no defense.

APPEAL from the district court of Adams county. Heard below before BEALL, J.

*A. H. Bowen* and *J. B. Cessna,* for appellant.

*Smith & McCreary, contra.*

IRVINE, C.

This was an action by the appellee against the appellant for the purpose of obtaining an injunction restraining the appellant from maintaining a certain ditch whereby it was alleged that waters collected upon the lands of appellant were discharged upon the lands of plaintiff, to plaintiff's damage. The evidence is hopelessly conflicting, and in some parts very obscure. As there was a general finding for the plaintiff, we must take it in the light in which it most strongly tends to support the allegations of the petition. So considered, it appears that the parties are owners of adjoining farms, the plaintiff's lying west of defendant's. Along the north line of these farms there is a highway. On the defendant's farm, and near the northeast corner thereof, there lie what the witnesses style two "lagoons." A review of the evidence discloses, however, that this term is used according to a local signification, and means merely a slight depression in the land, wherein in wet seasons surface water accumulates. It is quite evident that these are not permanent ponds or lakes. At some time in the past a ditch was constructed near the middle of the highway, whereby the surface water from the vicinity was collected and flowed along the highway westward into a ravine, or, as we shall hereafter style it, using another local term more accurately descriptive than any word of general use, a "draw." This draw crosses the highway north of plaintiff's land, passes over his land, and across defendant's toward the east. Shortly before this action was commenced, in accordance with some action by the county authorities, this ditch was

filled up and another one, nearer the south side of the highway, was constructed for the same purpose and having the same outlet. The so-called lagoons, by means of smaller ditches, were connected with this ditch in the highway. The damage alleged is that whereas the natural drainage from the lagoons is southeast, these ditches divert it to the north and thence along the highway to the draw, discharging a large body of water thereby across plaintiff's lands, cutting trenches and covering the land with accretions. It also appears that by the construction of a ditch much shorter than the one now maintained, the defendant might discharge the water from the lagoons into this same draw upon his own land.

One point urged in support of the appeal is that there is no evidence that down to the time of the trial any large quantity of water had been discharged by reason of the ditches in question, or that plaintiff's lands had been in fact injured. It is true that there is very little evidence to the contrary; but we regard this as immaterial. The plaintiff was not obliged to wait until the injury had been inflicted. There is ample evidence tending to show that such an injury, in the event of a wet season, would be the result of maintaining the ditches, and the remedy sought is preventive and not compensatory. Another point urged is that the action should properly be against the county, because the damage, if any, is directly inflicted by the ditch in the highway. While the prayer of the petition seems to extend to all the ditches, the district court granted the injunction only so far as to restrain the defendant from maintaining the ditches connecting the lagoons with the ditch in the highway. Assuming for the moment that any wrong was committed by maintaining this system of ditches, the defendant was the responsible person to the extent of the water discharged by the ditch the maintenance of which was restrained. The fact that the plaintiff may have a remedy against the county or against other proprietors for similar acts contributing to the same injury does not deprive

him of his remedy against the defendant for his share
therein. Another minor point may here be disposed of.
The district court excluded testimony accompanied by
an offer to show that the plaintiff and others had con-
spired together to institute criminal and civil actions
against Van Boening, contributing to the expense
thereof, and with the purpose of harassing him until he
should leave the township. This would be no defense to
this action. If as a matter of fact the plaintiff had a
good cause of action against the defendant, his motives
in prosecuting it are immaterial.

With these preliminary matters cleared away, the
question remains whether the plaintiff was entitled to
relief against the defendant for discharging surface
water through a ditch, in a volume, upon plaintiff's land,
contrary to the natural course of drainage; and the proof
showing that as effective and as convenient a method of
discharging water might have been availed of without
discharging it on the highway or on plaintiff's land.
That for a wrong of this kind injunction is an appropri-
ate remedy was held in *Davis v. Londgreen*, 8 Neb., 43.
That one's right to protect his land against surface water
does not extend so far as to permit him to collect it in a
volume and by means of a ditch to discharge it upon the
land of another has been several times decided. (*Fre-
mont, E. & M. V. R. Co. v. Marley*, 25 Neb., 138; *Lincoln
Street R. Co. v. Adams*, 41 Neb., 737; *Bunderson v. Burling-
ton & M. R. R. Co.*, 43 Neb., 545.) There are other cases
applying the principle, but we do not cite them, for the
reason that they seem rather to relate to the diversion of
water-courses than of surface water. The announce-
ment of the rule referred to is sufficient to dispose of this
case; but, as it developed upon the argument that an
impression prevails that the different decisions of the
court have not been altogether harmonious upon the sub-
ject, it seems well to review these cases, which to our
minds are in complete harmony, and to as clearly as pos-
sible state the principle which has governed all the de-

·cisions. Prior to 1893 there was no case dealing with the general principles of law on the subject.

*Davis v. Londgreen, supra,* was much like the present, except that it would seem that the pond which had been drained was permanent in its character, and not a mere depression in which surface water occasionally collected. It was held that such water could not lawfully, by means of a ditch, be discharged upon the land of one's neighbor.

*Pyle v. Richards,* 17 Neb., 180, was a case of the diversion of a stream, and while it has been cited in several surface water cases, it was in fact governed by different principles.

*Stewart v. Schneider,* 22 Neb., 286, depended for its solution entirely upon the effect of a prior decree fixing the rights of the parties, the correctness of which was not and could not have been then questioned.

*Morrissey v. Chicago, B. & Q. R. Co.,* 38 Neb., 406, is perhaps the leading case on the subject. It was there announced that the common law rule prevails, and that therefore one has the right to defend himself against surface water and that incidental damage inflicted upon another by such acts is *damnum absque injuria.* It is this case which is thought to be in conflict with some of the others. The opinion is entirely too long to abstract here, but an examination of the case discloses that the court had always in view the fact that there was neither allegation nor proof that the railroad embankment which had caused the injury had been unnecessarily or negligently constructed. The district court gave an instruction to the effect that one might upon his own land erect such barriers as he deemed necessary to keep off surface water falling upon it or coming from adjacent lands, and for any consequent injury to other lands he would not be responsible; but that such waters as fell upon his own lands or came thereon by surface drainage, he must keep within the boundaries or permit them to flow off without artificial interference, unless within the limits of his own lands he could turn them into a natural water-course.

Commenting upon this instruction, this court, through Commissioner RYAN, said: "In the latter part of this instruction it is barely possible that the court may have erred as against the defendant, in holding that it was the affirmative duty of the proprietor to keep within his boundary, or permit to flow off without interference, such waters as fall in rain or snow on his land or come there by surface drainage, unless within the limits of his own land he can turn them into a natural water-course. It is unnecessary to determine this question." In many of the cases cited in the opinion the distinction was clearly drawn between a proper defense against surface water and a negligent defense. This case, then, merely established the general rule, but there was kept constantly in view the fact that no negligence appeared; and that the existence of negligence might be a controlling feature.

In *Lincoln Street R. Co. v. Adams, supra,* while the rule was very briefly stated, in accordance with former opinions, that a proprietor may not collect surface waters on his own estate in a ditch and discharge them in a volume on the land of his neighbor, it is quite evident that the same principle was in view, and that this was deemed a negligent method of protecting one's self.

In *Anheuser-Busch Brewing Association v. Peterson,* 41 Neb., 897, a proprietor, in order to protect himself against surface water, filled in his lots, but in such a manner that water which otherwise would have passed off in another direction accumulated and entered the ice-house of plaintiff through a privy vault. The rule in *Morrissey v. Chicago, B. & Q. R. Co., supra,* was stated, and the court, through Judge POST, said: "Subject to that rule, every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless he is guilty of some act of negligence in the manner of its execution, he will not be answerable to his neighbor, although he may thereby cause the surface water to flow upon or from the premises of the latter to

his damage. The injury in such case is but a mere incident to the proper use of the owner's property; but if in the execution of the enterprise in hand he is guilty of negligence which is the natural and proximate cause of injury to the adjoining proprietor, the law holds him accountable therefor. Such is the essence of the authorities cited in *Morrissey v. Chicago, B. & Q. R. Co., supra,* and undoubtedly the law of this case."

In *Bunderson v. Burlington & M. R. R. Co., supra,* it was held that the construction of a railroad embankment whereby water had been backed up upon the lands of a superior proprietor, was no cause of action, and this for the reason that to have made an opening or culvert would have discharged the water in a volume upon the lands of an inferior proprietor, which would have been tortious.

In *Lincoln & B. H. R. Co. v. Sutherland,* 44 Neb., 526, the railroad company was held liable because of its negligence in the construction of an embankment, and the words above quoted from *Anheuser-Busch Brewing Association v. Peterson, supra,* were quoted with approval as controlling the case.

In *City of Beatrice v. Leary,* 45 Neb., 149, it was said: "The doctrine of this court is the rule of the common law, that surface water is a common enemy and that an owner may defend his premises against it by dike or embankment, and if damages result to adjoining proprietors by reason of such defense he is not liable therefor; but this rule is a general one and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor; and, therefore, every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and, unless guilty of some act of negligence in the manner of its execution, will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow on the premises of the latter to his damage; but if in the execution of

such enterprise he is guilty of negligence which is the natural and proximate cause of injury to his neighbor, he is accountable therefor."

We think that the foregoing review of the cases shows that instead of there existing any conflict in the decisions, it has been the settled and uniform rule, applied in every case, that while one may protect his land from surface water, he is responsible for any negligence in so doing occasioning damage to his neighbor. The case is not different from the exercise of any other undoubted right. I have as much right to drive along the highway as I have to defend my land from surface water; but if I drive negligently and injure someone, I am responsible. We think, in view of this principle, the evidence amply sustained the finding and decree of the district court.

JUDGMENT AFFIRMED.